IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01176–RBJ-MJW

EDWARD ALLEN aka Edward Clutts,

Plaintiff(s),

v.

WARDEN FALK OF STERLING CORRECTIONAL FACILITY,

Defendant(s).

## RECOMMENDATION ON

## (1) DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (DOC. 12) OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT (Docket No. 25);

## (2) PLAINTIFF'S SECOND MOTION PERSENT [sic] FRCP [sic] 65 (Docket No. 27);

## and

## (3) PLAINTIFF'S MOTION FOR JOINDER OF PARTIES (Docket No. 42)

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before the undersigned pursuant to an Order of Reference to United

States Magistrate Judge entered by Judge R. Brooke Jackson on October 24, 2014

(Docket No. 31).

## PLAINTIFF'S ALLEGATIONS

The pro se incarcerated plaintiff raised three claims against thirteen defendants

in his Amended Complaint brought pursuant to 42 U.S.C. § 1983.  (Docket No. 12).

However, following an Order issued by Judge Lewis T. Babcock (Docket No. 16 at 10),

only one defendant and one claim remain, namely, plaintiff's Eighth Amendment claim

against Defendant Warden Falk of Sterling Correctional Facility (claim three) (Docket No. 12 at 9; see Docket No. 24 amending caption to reflect Falk's name) in which plaintiff alleges the following.

In July 2004 plaintiff was sentenced to three concurrent terms of ten years to life, and the sentencing court stated that it could not order the plaintiff to take sex offender treatment.  On or about August 15, 2004, plaintiff's case manager Mr. Jones informed plaintiff he was recommending the sex offender treatment program, and if plaintiff did not cooperate, plaintiff would be moved to a place where "things can be done."  In 2005 the sex offender treatment program sent plaintiff a form which required him to confess a crime, which he refused to sign.  He was thus deemed to be in denial and non-compliant with sex offender treatment.

Over the past ten years, plaintiff has been placed in several facilities where security threat group (STG) prisoners have threatened, beaten, and attempted to extort and kill him.  On July 31, 2009, he arrived at Sterling Correctional Facility ("SCF").  He had already filed a civil case (Case No. 08-cv-02506-ZLW-BNB) about the violence he had already experienced, which was ultimately dismissed as frivolous.  In that case, Magistrate Judge Boland conducted a hearing during which plaintiff informed the court he was still living under the threat of violence.  After the hearing, plaintiff was moved to Living Unit 4 ("LU4") by the Warden/Designee of SCF.  Plaintiff was housed in a cell with an inmate who informed him that if he stayed in that cell without a fight with the plaintiff, his boys would beat him down.  That inmate was moved to another cell.  Then inmate Zamora was moved in, and he also had gang affiliations.  Plaintiff went to Sergeant Buckner on several occasions, but Buckner refused to move plaintiff.  Zamora

came back into the cell and starting hitting plaintiff until a voice came over the speaker stating, "Zamora you and Clutts stop your shit and you pack up your [sic] moving." On August 12, 2011, prisoner Edward Douglas snuck up behind the plaintiff with a lock in a sock and beat the plaintiff. On April 25, 2012, inmate Windschel attacked plaintiff in the "gang pod" where plaintiff was being housed.

Since 2008, after the hearing held by Judge Boland, plaintiff has suffered scars on his face, a broken rib, and a lost tooth. The Attorney General's Office has refused to do anything about the threats of violence. The Warden/Designee has gone out of his way to place plaintiff in with STG prisoners. Plaintiff has been told he will be protected from STG prisoners if he takes sex offender treatment. It violates plaintiff's Eighth Amendment right to not protect him from other prisoners. It is common knowledge that sex offenders are attacked, beaten, extorted, and killed by STG prisoners.

Plaintiff seeks injunctive relief in the form of a restraining order preventing the CDOC from placing him in a facility with STG prisoners. He also seeks declaratory relief and punitive and compensatory damages.

**PENDING MOTIONS**

Now before the court for a report and recommendation are the following three motions: (1) Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 12) or Alternatively, Motion for Summary Judgment (Docket No. 25); (2) Plaintiff's Second Motion Persent [sic] FRCP [sic] 65 (Docket No. 27); and (3) Plaintiff's Motion for Joinder of Parties (Docket No. 42). Responses have been filed with respect to the first two motions (Docket Nos. 32 and 35). Defendant filed a reply in support of his motion (Docket No. 37). Plaintiff just filed an untimely reply in support of his motion for a

temporary restraining order ("TRO") (Docket No. 44).  The court has considered these motions, the responses thereto, the replies, and applicable case law and statutes.  In addition, the court has taken judicial notice of the court file and plaintiff's other civil actions in this court.  The court now being fully informed makes the following findings, conclusions of law, and recommendations.

### Defendant's Motion to Dismiss or for Summary Judgment

Defendant moves to dismiss the Amended Complaint (Docket No. 12) pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the following grounds: (1) plaintiff failed to exhaust his administrative remedies and his claim should thus be dismissed pursuant to the Prison Litigation Reform Act ("PLRA"), (2) his claim is largely time-barred, (3) Falk is entitled to Eleventh Amendment immunity, (4) plaintiff fails to allege personal participation on behalf of Falk, (5) plaintiff fails to state an Eighth Amendment claim; (6) Falk is entitled to qualified immunity, and (7) plaintiff fails to state a claim for damages. The only argument alternatively brought pursuant to Fed. R. Civ. P. 56 is number 1, the non-exhaustion argument.

Rule 12(b)(1):

> empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).  As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994).  Statutes conferring jurisdiction on federal courts are to be strictly construed.  *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

   Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true.  *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact.  *See id.* at 1003.  A court's consideration of evidence outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56.  *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d 1091, 1094-95 (D. Colo. 2001).

   Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atlantic Corp., 550 U.S. at 555 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason

to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting <u>Bell Atlantic Corp.</u>, 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" <u>Khalik v. United Air Lines</u>, 671 F.3d 1188, 1191 (10th Cir. 2012). The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" <u>Id.</u> The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" <u>Id.</u>

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. <u>Morse v. Regents of the Univ. of Colo.</u>, 154 F.3d 1124, 1126-27 (10th Cir. 1998); <u>Seamons v. Snow</u>, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." <u>Khalik</u>, 671 F.3d at 1190 (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is

liable." Id. at 1191.

Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Id. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at

1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)).  "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment."  Southway, 149 F. Supp.2d at 1274.  "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party."  Id. at 1273.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  Id.

**Statute of Limitations.**  Plaintiff's § 1983 claim is governed by the two-year statute of limitations contained in § 13-80-102, C.R.S.  See Workman v. Jordan, 32 F.3d 475, 482 (10th Cir. 1994); Merrigan v. Affiliated Bankshares of Colo., Inc., 775 F. Supp. 1408, 1411-12 (D. Colo. 1991).  Federal law, rather than state law, determines when a federal claim accrues.  The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of injury which is the basis of his action.  Industrial Constructors Corp. v. United States Bur. of Reclamation, 15 F.3d 963,

969 (10th Cir. 1994). Dismissal under Fed. R. Civ. P. 12(b)(6) is proper when the Complaint indicates on its face that the statute of limitations has expired. See Aldrich v. McCulloch Props. Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

Here, the original Complaint was dated April 15, 2014 (Docket No. 1 at 13), and was filed on April 25, 2014. Under the prison "mailbox rule," the Complaint should be deemed "filed" at the moment of its delivery to prison authorities for forwarding to the District Court. See Houston v. Lack, 487 U.S. 266, 275 (1988). Plaintiff avers therein and in the Amended Complaint that he had conflicts with other inmates on four separate occasions - two occurred sometime between July 31, 2009 and August 12, 2011, then next was on August 12, 2011, and the fourth was on April 25, 2012 – and defendant failed to protect him. (Docket No. 12 at 9). Defendant asserts that plaintiff's claim was not timely filed with respect to all incidents other than the alleged altercation on April 25, 2012, because this action was not commenced within two years of the date these earlier claims occurred since at the time of the incidents, plaintiff knew or had reason to know of the injury which was the basis of his action.

In response, plaintiff essentially argues that the continuing violation doctrine should be applied to his claims. "Under this doctrine, a plaintiff may avoid the statute of limitations when the defendant has acted pursuant to a pattern or longstanding policy or practice of constitutional violations." Mercer-Smith v. New Mexico Children, Youth and Families Dep't, 416 Fed. Appx. 704, 712 (10th Cir. Mar. 21, 2011). Plaintiff's argument, however, fails because "the doctrine of continuing violations does not apply to § 1983 claims." Id. (citing Hunt v. Bennett, 17 F.3d 1263, 1265 (10th Cir. 1994) (holding that the doctrine of continuing violations does not "extend[] . . . to a § 1983 claim")). See

10

Bartowsheski v. Topless, 2014 WL 3606989, at *2 n.2 (D. Colo. July 21, 2014) (same).

The court finds that plaintiff knew of the existence and cause of any injuries from the incidents that occurred more than two years before he commenced this action. Furthermore, plaintiff is not an inexperienced litigator, as evidenced by the many previous civil actions he has brought in this court, including at least two others which also involved Eighth Amendment claims concerning his being housed with gang members. See, e.g., Civil Action Nos. 08-cv-02506-ZLW-BNB (Docket No. 3); 09-cv-02325-CMA-BNB (Docket No. 3 at 8). Nevertheless, here he failed to bring his claims concerning the first three incidents in a timely manner, and he has established no basis for tolling the statute of limitations. Therefore, plaintiff's claims based on the first three alleged incidents are time barred, and the only timely claim which remains concerns the alleged April 2012 incident.

**Exhaustion.** The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA requires exhaustion as a "precondition" to bringing litigation and requires dismissal where a litigant has failed to complete exhaustion before initiating a suit. See Fitzgerald v. Corrections Corp. of Am., 403 F.3d 1134, 1140-41 (10th Cir. 2005). This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." Beaudry v. Corrections Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). Section "1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). The

11

"failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007).  As an affirmative defense, "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant." Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007).

"When raising an affirmative defense in a motion for summary judgment, '[t]he defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted.' . . . 'If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact.' . . . 'If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is entitled to summary judgment as a matter of law.'" Sparks v. Foster, 241 Fed. Appx. 467, 472, 2007 WL 1748509, at *4 (10th Cir. 2007) (quoting Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997)).  This court finds that the plaintiff has not made such a showing.

The Colorado Department of Corrections ("CDOC") has a multi-step administrative grievance process available to inmates set forth in its regulations which entails first a written informal grievance and then a formal three-step written grievance procedure. See CDOC Administrative Regulation 850-4.  The Tenth Circuit has found that an inmate must appeal his grievance through all available channels to exhaust his administrative records fully. See Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies.").  Here, defendant has shown that despite plaintiff's familiarity with the

12

grievance process, plaintiff failed to avail himself of it with respect to his claim that

defendant failed to protect him from an incident which allegedly occurred on or about

April 25, 2012.

In response, plaintiff asserts he has exhausted the administrative remedies

available because case managers allegedly have refused grievances on this matter

twice.  In support of this assertion, plaintiff references Exhibit A-4 from Civil Action No.

08-cv-02506-ZLW-BNB, and the Nature of Case section of his Complaint in this action.

The court reviewed the docket sheet in Civil Action No. 08-cv-02506-ZLW-BNB and did

not find any link or mention of Exhibit A-4 in any of the 205 docket entries.  The court

did not open and search through the documents filed in that earlier case because it is

not the court's responsibility to track down plaintiff's exhibits.  With respect to the

plaintiff's Nature of the Case section in the original Complaint in this action, plaintiff

stated in pertinent part, "On March 19, 2014 the plaintiff went to his case manager Mr.

Cantin and asked him for grievance process forms for the following issues.  Mr. Cantin

informed the plaintiff that these issues were non-grivable [sic] an [sic] must be taken to

court." (Docket No. 1 at 6).  Plaintiff made a similar claim in his Response.  (Docket No.

32 at 2-3).  Plaintiff further contends in his Response that the issue of guards placing

him in harm was grieved (citing Exhibit I), again demonstrating indifference about

placing him with STG prisoners.  He claims he did not file another grievance because

he was not allowed to do so.  (Docket No. 32 at 3).  Furthermore, he contends if a

prisoner is unable to obtain grievance forms, no administrative remedy is "available," the

prisoner may file in court, and defendant cannot claim plaintiff has not exhausted

administrative remedies that are not available.

13

The court notes that plaintiff's Exhibit I referenced by plaintiff in his Response is a Grievance Form dated June 26, 2009. That grievance concerns a claim by plaintiff that he was being forced into a violent situation by four CDOC employees, and he requested therein that he be removed from that violent facility and be given an apology by the four officers who assaulted him. (Docket No. 32 at 16). This Exhibit has no relevance to the issue of whether plaintiff exhausted his administrative remedies with respect to his claim of having been assaulted in April 2012, almost three years after Exhibit I was submitted.

There is a recognized exception to the exhaustion requirement when an inmate has been prevented from filing a grievance. See Jernigan, 304 F.3d at 1032. "When prison officials block a prisoner's access to the grievance process, the administrative remedies are not 'available' to the prisoner and, therefore, do not need to be exhausted prior to initiation of [an] . . . action." Main v. Martin, 2009 WL 215404, *5 (D. Colo. Jan. 22, 2009). Plaintiff, however, has provided no more than his unsupported, unsworn conclusory allegation that he was not permitted to file a grievance concerning the claims raised in this civil action. Moreover, as correctly noted by defendant in the Reply, pursuant to the plain language of the administrative regulation concerning grievances, inmates must file their first grievance (step 1) "within 30 days of the discovery of the issue or complaint . . . ." AR 850-04. Therefore, plaintiff should have filed his Step I Grievance at the latest by on May 25, **2012,** yet in his Response he indicates he did not even attempt to do so until almost two years later on March 19, **2014**. Therefore, even if plaintiff did in fact ask for a grievance form in 2014, his claim is not saved. Plaintiff thus has not created a genuine issue of material fact so as to defeat defendant's

14

summary judgment motion.  See White v. Tharp, 2008 WL 596156, *10 (D. Colo. Feb.

29, 2008) (Inmate plaintiff never provided copies of his grievances to the court or any

actual evidence that would allow the court to conclude that they were filed.  Plaintiff

provided no more than his unsupported conclusory allegations regarding defendants'

alleged obstruction of his use of the administrative process, which were not sufficient to

create a genuine issue of material fact.); Brooks v. Johnson, 2008 WL 906130 (D. Colo.

Feb. 15, 2008) (Inmate plaintiff merely stated in his response that he did file an appeal

and that grievance forms are frequently lost, misplaced, or destroyed.  The absence of

any evidence, other than plaintiff's allegation in his response, was insufficient.), adopted

by 2008 WL 906839 (D. Colo. Mar. 31, 2008), aff'd, 307 Fed. Appx. 247 (10th Cir. Jan.

16, 2009), cert. denied, 558 U.S. 854 (2009).

        "Rule 56(e) permits a proper summary judgment motion to be opposed by any of

the kinds of evidentiary materials listed in Rule 56(e), except the mere pleadings

themselves . . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The absence of

any evidence, other than plaintiff's allegation in his response, is insufficient.  See Sparks

v. Foster, 241 Fed. Appx. at 474 (inmate plaintiff was required to go beyond his

pleadings and set forth specific facts to show he was denied grievance forms or was

prevented from exhausting available administrative remedies); Maclary v. Carroll, 142

Fed. Appx. 618, 2005 WL 1883843 (3rd Cir. Aug. 9, 2005) (In response to an affidavit

stating the inmate plaintiff filed no grievances concerning the conditions at issue, the

inmate merely responded that he filed unanswered and unprocessed grievances and

letters to prison officials, but he did not offer any support for those bare assertions.

Court found his opposition to defendants' summary judgment motion did not create a

15

genuine issue for trial.); Brooks v. Conway, 2007 WL 951521, at *4 (W.D.N.Y. Mar. 28, 2007) (Inmate plaintiff's "bald and conclusory assertions" that the defendants lost his grievance papers were, without more, insufficient to avoid summary judgment on plaintiff's claim based on failure to exhaust.).  See Sparks v. Rittenhouse, 2007 WL 987473, at *6 (D. Colo. Mar. 29, 2007) (Court cannot consider the factual assertions by the plaintiff in his brief for purposes of determining whether he can establish a constitutional violation.), aff'd, 314 Fed. Appx. 104 (10th Cir. Sept. 16, 2008).  See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) ("[W]hen a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'") (emphasis added); Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 n.17 (1970) (unsworn statement submitted in support of a motion for summary judgment does not meet the requirements of Fed. R. Civ. P. 56(e)).  To find otherwise would permit any inmate to circumvent the exhaustion requirement merely by making bald allegations of denial of grievance forms or other purported acts of obstruction of the administrative process.

Despite this finding, the court will proceed to address the merits of plaintiff's Eighth Amendment claim below.

**Official Capacity.**  Defendant correctly assert that to the extent the plaintiff is suing him in his official capacity for damages, defendant is entitled to immunity pursuant to the Eleventh Amendment.  It is well established that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989), and that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official

16

capacities because such suits are in essence suits against the state." <u>Hunt v. Bennett</u>,

17 F.3d 1263, 1267 (10th Cir. 1994).  Therefore, to the extent that the plaintiff's claim

against the defendant is against defendant in his official capacity for monetary

damages, such relief is barred by the Eleventh Amendment, and summary judgment

should enter for the defendant on any such claim.

**Eighth Amendment Claim.**   Defendant asserts that there was no violation of

the plaintiff's Eighth Amendment rights.  "[T]he treatment a prisoner receives in prison

and the conditions under which he is confined are subject to the scrutiny of the Eighth

Amendment." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (citation omitted).  The

Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S.

CONST. Amed. VIII.  Certain conditions of confinement, if they inflict pain

unnecessarily and wantonly, may constitute cruel and unusual punishment under the

Eighth Amendment.  <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986).  "An inmate making a

direct challenge to conditions of confinement under the 8th Amendment, must show that,

judged by contemporary standards of decency, the conditions either involve the wanton

and unnecessary infliction of pain, that they are grossly disproportionate to the severity

of the crime, or that they entail serious deprivation of basic human needs."

<u>Georgacarakos v. Wiley</u>, 2010 WL 1291833, at *11 (D. Colo. Mar. 30, 2010) (internal

quotation marks and citation omitted).  "Prison officials must . . . take reasonable

measures to guarantee those inmates' safety." <u>Id.</u> (citation omitted).  "[P]rison officials

have a duty . . . to protect prisoners from violence at the hands of other prisoners."

<u>Farmer</u>, 511 U.S. at 833 (internal quotation marks and citation omitted).  "It is not,

however, every injury suffered by one prisoner at the hands of another that translates

into constitutional liability for prison officials responsible for the victim's safety." Id. at 834.

"An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind." Matthews v. Wiley, 744 F. Supp.2d 1159, 1176 (D. Colo. 2010).  The objective component addresses whether plaintiff is "incarcerated under conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834, which includes "official conduct that is sure or very likely to cause serious injury at the hands of other inmates." Benefield v. McDowall, 241 F.3d 1267, 1272 (10th Cir. 2001) (internal quotation marks and citation omitted.).  "The subjective component follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Matthews, 744 F. Supp.2d at 1176 (quotations omitted).

The court finds that plaintiff has not shown an Eighth Amendment claim against defendant for deliberate indifference to an objectively serious risk to his safety.  Plaintiff alleges that over a period of about five years, he had isolated conflicts with four individuals.  Plaintiff does not allege that these individuals or the incidents were connected, nor does he allege that he had any pre-existing concerns regarding any of these four individuals other than having a general concern about potential violence by STG inmates.  Moreover, he does not allege that he ever reported any concerns about these individuals or specific STG groups to the defendant or that defendant was otherwise apprised of any substantial risk of serious harm to plaintiff to which defendant was subsequently deliberately indifferent.  "Being subjected to the mere possibility of

18

assault from another inmate is not sufficiently serious to give rise to an Eighth

Amendment violation."  <u>Bingaman v. Torrez</u>, 2012 WL 6762218, at *5 (D. Colo. Nov. 5,

2012), adopted by 2013 WL 50428 (D. Colo. Jan 3, 2013).  An Eighth Amendment claim

is not stated by alleging generally that as "a sex offender, [plaintiff] faced 'serious risks

of intimidation, threats, and violence shared by all sex offenders while in prison.'"  <u>Id.</u>

<u>See</u> <u>Pacheco v. Timme</u>, 2012 WL 4049833, at *9 (D. Colo. Aug. 1, 2012) ("Plaintiff

alleges that his life and well-being are being placed in jeopardy by his sex offender

classification. . . .  Because Plaintiff has not identified any actual threats, this is not a

valid Eighth Amendment Claim."), adopted by 2012 WL 4049831 (D. Colo. Sept. 13,

2012) (citing <u>Riddle v. Mondragon</u>, 83 F.3d 1197 (10th Cir. 1996) (plaintiff failed to allege

any specific threat to his personal safety, much less conditions that pose "a substantial

risk of serious harm")).

Based upon the finding above, summary judgment should enter for the defendant

on plaintiff's Eighth Amendment claim.

**Plaintiff's Second Motion Pursuant to Rule 65**

Plaintiff moves pursuant to Fed. R. Civ. P. 65 "to maintaine [sic] status quo."

(Docket No. 27).  He asks the court "for a preliminary injunction[1] [sic] preventing the

defendants from transferring the plaintiff to another facility or transfer station for the

intire [sic] duration of this case."  (Docket No. 27).

"A [TRO] or preliminary injunction is extraordinary relief."  <u>Statera, Inc. v.</u>

<u>Hendrickson</u>, 2009 WL 2169235, *1 (D. Colo. July 17, 2009).  Injunctive relief should be

---

[1]In his Reply, plaintiff indicates that he is seeking a TRO.  (Docket No. 44 at 1).

19

granted only when the moving party clearly and unequivocally demonstrates its necessity.  See Schrier v. University of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005).  In the Tenth Circuit, the party requesting injunctive relief must establish that: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits.  Id.  "In addition to the foregoing factors, a party seeking a [TRO] also must demonstrate clearly, with specific factual allegations, that immediate and irreparable injury will result absent a [TRO]."  Statera, 2009 WL 2169235, *1.

Furthermore, "[b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, . . . [the Tenth Circuit has] identified the following three types of specifically disfavored preliminary injunctions . . . (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits." Schrier, 427 F.3d at 1258-59 (citation and quotations omitted).  "Such disfavored injunctions 'must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.'" Id. at 1259.

Here, this court finds that the plaintiff has not made the requisite showing.  "A presumption of irreparable injury exists where constitutional rights are infringed." Bomprezzi v. Hoffman, 2014 WL 6617096, at *4 (D. Colo. Nov. 21, 2014) (citing

Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001)).  Based upon the findings

above, however, plaintiff has failed to establish a likelihood of success on his Eighth

Amendment claim.  As a result, he is not entitled to a presumption of irreparable injury.

"Determining whether irreparable harm exists can be a difficult and close question."  Id.

(citing Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1263

(10th Cir. 2004)).  "[T]he concept of irreparable harm does not readily lend itself to

definition, nor is it an easy burden to fulfill.  In defining the contours of irreparable harm,

case law indicates that the injury must be both certain and great, and that it must not be

merely serious or substantial."  Id. (internal quotations and citations omitted).  Injunctive

relief is issued "to prevent existing or presently threatened injuries."  Connecticut v.

Massachusetts, 282 U.S. 660, 674 (1931).  Such relief "will not be granted against

something merely feared as liable to occur at some indefinite time in the future."  Id.

Plaintiff has made no showing in his motion that he is currently threatened with

immediate and irreparable injury.  Furthermore, in his Response (Docket No. 35),

defendant states that at the present time, plaintiff is in a facility which houses no known

custody issues of plaintiff, that there are STG members at every prison in the state,[2] and

thus there are no "STG-Free" facilities in which plaintiff could be housed.  In addition,

plaintiff's failure to identify a particular STG or gang makes it difficult to determine who,

---

[2]Defendant states that there are approximately 83 different identified major STG groups known within the CDOC, and of those groups there are approximately 190 different sub-groups which may congregate around issues of race and ethnicity. Furthermore, there are currently approximately 3,100 identified STG members throughout CDOC's facilities, and that number increases to approximately 8,000 offenders when associates and suspected members are accounted for.  (Docket No. 35 at 2).

in particular, may pose a risk to him as alleged.  (Docket No. 3 at ¶ 22).

Because the plaintiff has failed to establish that there is a substantial likelihood

that he will prevail on the merits and that he will suffer irreparable injury unless the

injunction issues, I need not address the remaining requirements for injunctive relief.

### **Plaintiff's Motion for Joinder of Parties**

Plaintiff moves pursuant to Fed. R. Civ. P. 19 for joinder of several parties.  He

notes that he seeks injunctive relief to restrain the CDOC from placing him with STG

prisoners in the same facility, and defense counsel responded that Warden Falk has no

authority to provide such relief.  Therefore, plaintiff asks that the CDOC and Executive

Director Rick Ramish [sic] be joined as parties who can grant relief.  In addition, plaintiff

asks for joinder of Paul Hollenbeck, Associate Director of Offender Service, who has

stated he is responsible for plaintiff's classification and overall management and has

personally approved plaintiff's placement with STG prisoners.  Next, plaintiff asks for the

joinder of Warden Designees # 1, 2, and 3, who are employees of the CDOC working at

SCF, for their personal participation in placing and allowing plaintiff to be attacked by

STG prisoners.

Rule 19, however, "is not the mechanism which would afford [plaintiff] the relief

he seeks.  The Tenth Circuit has explained that, in circumstances where a party seeking

affirmative relief (i.e. a plaintiff . . . ) seeks to add a party-defendant, Rule 19 is

'inapplicable, because while it provides for the Joinder of Persons Needed for Just

Adjudication, . . . it does not provide a joinder mechanism for plaintiffs.'"  Unit Petroleum

Co. v. Frost, 2013 WL 1398987, at *1 (N.D. Okla. Apr. 5, 2013) (quoting Shaw v. AAG

Eng'g & Drafting Inc., 138 F. App'x 62, 66 (10th Cir. 2005)) (internal quotations omitted).

22

Rule 19 "is not a means by which a plaintiff can join a truly liable defendant . . . ."

Birmingham v. Experian Info. Solutions, Inc., 633 F.3d 1006, 1021 (10th Cir. 2011).  See

Glancy v. Taubman Centers, Inc., 373 F.3d 656, 669 (6th Cir. 2004) ("Rule 19 is the tool

of the defendant, as the plaintiff has the power to choose which parties it wishes to sue

and generally has ample freedom to amend its complaint to add a party.").  See also

Fed. R. Civ. P. 12(b)(7) (referring to "defense" of "failure to join a party under Rule 19").

"Rule 15(a) governs the addition of a party . . . because it is actually a motion to

amend."  United States ex rel. Precision Co. v. Koch Indus., Inc., 31 F.3d 1015, 1018

(10th Cir. 1994).  Pursuant to Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give

leave [to amend] when justice so requires."  "Refusing leave to amend is generally only

justified upon a showing of undue delay, undue prejudice to the opposing party, bad

faith or dilatory motive, failure to cure deficiencies by amendments previously allowed,

or futility of amendment."  Bylin v. Billings, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting

Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993)).   Here, based upon the

findings above, this court finds that plaintiff's motion should be denied on the basis of

futility of amendment.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendant's Motion to Dismiss Plaintiff's Amended

Complaint (Doc. 12) or Alternatively, Motion for Summary Judgment (Docket No. 25) be

**granted**.  It is further

**RECOMMENDED** that Plaintiff's Second Motion Persent [Sic] Frcp [Sic] 65

(Docket No. 27) be **denied**.  It is further

**RECOMMENDED** that Plaintiff's Motion for Joinder of Parties (Docket No. 42) be denied.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  December 18, 2014                         s/ Michael J. Watanabe
      Denver, Colorado                         Michael J. Watanabe
                                    United States Magistrate Judge